**RAY E. LOPER LUMBER COMPANY, Inc., Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**W. P. BROWN AND SON LUMBER COMPANY, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**BROWN LUMBER COMPANY, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**The MOBILE AND GULF RAILROAD COMPANY, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 20786.

United States Court of Appeals, Sixth Circuit.

June 24, 1971.

Charles F. Wood, Louisville, Ky., for plaintiffs-appellants.

William E. Estabrook, Tax Division, Dept. of Justice, Washington, D. C., for defendant-appellee; Johnnie M. Walters, Asst. Atty. Gen., Joseph M. Howard, Bennet N. Hollander, William S. Estabrook, III, Attys., Tax Division, Dept. of Justice, Washington, D. C., on brief; George J. Long, U. S. Atty., Louisville, Ky., of counsel.

Before PHILLIPS, Chief Judge, PECK, Circuit Judge, and McALLISTER, Senior Circuit Judge.

---

PHILLIPS, Chief Judge.

Accumulated earnings taxes were assessed against the appellant corporations under § 531 of the Internal Revenue Code of 1954. The narrow issue presented in this case is when did interest begin to run on these assessments.

The Government contends that interest runs from the due dates of the income tax returns of the taxpayers for the various taxable years in question. The taxpayers assert that interest did not begin to run until the date of notice and demand by the Commissioner.

In addition to the principal amount of accumulated earnings taxes assessed against them (the validity of which they do not contest), the taxpayer corporations paid interest totaling $272,866.86, calculated under the interpretation of the statute insisted upon by the Government. After denial of their claims for refund, the taxpayers filed this action for recovery of the interest.

The District Court held in favor of the Government. We reverse.

The facts were stipulated and are summarized in the findings of fact of the District Court. These undisputed findings are incorporated herein as Appendix A.

In support of its position the Government relies on .26 U.S.C. § 6601(a), which provides as follows:

"§ 6601. Interest on underpayment, nonpayment, or extensions of time for payment, of tax

"(a) General rule.—If any amount of tax imposed by this title (whether required to be shown on a return, or to be paid by stamp or by some other method) is not paid on or before the last date prescribed for payment, interest on such amount at the rate of 6 percent per annum shall be paid for the period from such last date to the date paid."

Under this section interest runs from the last day prescribed for payment of the tax to the date on which payment is received. The determinative question is what is the "last date prescribed for payment" of accumulated earnings tax. To answer the question we look to the language of the applicable sections of the Internal Revenue Code of 1954, together with the purpose of the accumulated earnings tax, the mode of its determination and the mechanics of its assessment.

The accumulated earnings tax is a surtax on any corporation "formed or availed of for the purpose of avoiding the income tax with respect to its shareholders * * * by permitting earnings and profits to accumulate instead of being divided or distributed." 26 U.S.C. § 532. The tax is distinct from the income tax on corporations. It is a "congressional attempt to deter use of a corporate entity to avoid personal income taxes." Its purpose " 'is to compel the company to distribute any profits not needed for the conduct of its business so that, when so distributed, individual stockholders will become liable' for taxes on the dividends received." United States v. Donruss Co., 393 U.S. 297, 303, 89 S.Ct. 501, 505, 21 L.Ed.2d 495.

The following description of the distinction between the tax on accumulated earnings and the corporate income tax is quoted from H. Mullis, Interest on the Accumulated Earnings Tax, 57 A.B.A.J. 378 (1971):

"Apart from its apparent prohibitive character, there are several additional respects in which the accumulated earnings tax differs noticeably from the other Chapter 1 corporate taxes. First, it is not required to be self-assessed by the corporation, i. e., there is no provision made in the corporate income tax return for its reporting, nor are there any schedules or instructions for current reporting of the item. Second, the tax is initiated and imposed in practice only after a prior administrative determination that corporate earnings and profits have been accumulated 'beyond the reasonable needs of the business'. Finally, liability for the tax is determined only after complex and diffi-

cult evaluations, *i. e.*, whether the corporation was formed or availed of with the condemned intent and whether the accumulation exceeded the reasonable needs of the business."

For a comprehensive statement of the history, development and purpose of the accumulated earnings tax, reference is made to the opinion of the Court of Claims in Motor Fuel Carriers, Inc. v. United States, 420 F.2d 702, 190 Ct.Cl. 385. In that decision the court held that interest on the accumulated earnings tax begins to run only after notice and demand. The court placed emphasis upon the fact that the tax is not self-assessing, saying:

"Even though the statute has not, since 1924, explicitly required the Commissioner of Internal Revenue to make a determination that the accumulation is unreasonable, and therefore that the tax is imposable, the actual practice is, and has been, that the tax is not 'self-assessing' but is levied only after and by determination of the Revenue Service. There is no provision in, or part of, Treasury Form 1120 (the return form) for reporting the amount subject to this tax; nor are there any schedules or instructions for reporting the item. It is left wholly to the Government's initiative. See Mertens, Law of Federal Income Taxation, Vol. 7, § 39.57 (Rev. ed. 1967).

"This procedure has not come about by happenstance, the Treasury's neglect, or the irresponsibility of corporate taxpayers. It is inherent in the nature of the tax—and was formerly recognized specifically by Congress— that a taxpayer can hardly determine for itself, with any accuracy, if the tax is due, and if so to what extent. The general standard of liability (§ 532) is the elusive one that the corporation has been, during the taxable year, 'formed or availed of for the purpose of avoiding the income tax with respect to its shareholders or the shareholders of any other corporation, by permitting earnings and profits to accumulate instead of being divided

or distributed.' The difficulty of applying this criterion is increased by the further declarations that 'the fact that the earnings and profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid the income tax with respect to shareholders' (§ 533), and (with respect to non-holding or non-investment company taxpayers) that account is to be taken of that part of earnings and profits 'retained for the reasonable needs of the business,' including 'the reasonably anticipated needs of the business' (§§ 535(c), 537). These are complex and difficult evaluations, invoking very large elements of judgment and discretion, and with great room for difference of opinion." (Footnotes omitted.)

We return to the language of § 6601. This section begins, as quoted above, by providing that interest runs from the last day prescribed for payment of the tax. Section 6601(c) is as follows:

"(c) Last date prescribed for payment.—For purposes of this section, the last date prescribed for payment of the tax shall be determined under chapter 62 with the application of the following rules. * * * "

The "following rules" contained in § 6601(c) will be discussed later in this opinion.

Since § 6601(c) refers to Chapter 62, we turn to that chapter of the Code. The general rule of that chapter is stated in § 6151(a) which provides as follows:

"§ 6151. Time and place for paying tax shown on returns

"(a) General rule.—Except as otherwise provided in this section, when a return of tax is required under this title or regulations, the person required to make such return shall, without assessment or notice and demand from the Secretary or his delegate, pay such tax to the internal revenue officer with whom the return is filed, and shall pay such tax at the time and place fixed for filing the return (determined without regard to

any extention of time for filing the return)."

We do not consider this general rule to be applicable in the present case since no return of tax is required on the part of the taxpayer in connection with the accumulated earnings tax. We read the general rule of § 6151(a) as designed to cover only the ordinary tax situation in which the taxpayers are required to file a return showing the tax calculated as due and owing, and not the situation here involved in which the Commissioner, not the taxpayers, calculates the tax. This distinction is highlighted by the title of § 6151: "Time and place for paying *tax shown on returns.*" (Emphasis supplied.) While taxpayers would not be entitled to a refund of interest if they had merely "undercalculated" a tax that was self-assessing and shown the undercalculated amount on their returns, United States v. Northwestern Mutual Ins. Co., 315 F.2d 723 (9th Cir.), § 6151(a) at the most is limited to taxes which are shown or *"showable"* on a return. The Commissioner does not provide a method by which taxpayers can calculate the accumulated earnings tax nor does he provide a form or "return" on which to report the tax. We therefore conclude that § 6151 is not applicable here.

We construe the remaining sections of Chapter 62 also to be inapplicable to the issue presented on this appeal. In our opinion § 6155 is inapplicable since it refers only to what is required of a taxpayer receiving a valid notice and demand for payment. It does not define the meaning of the language of § 6601 (a) referring to the last date prescribed for payment of the tax.

Since § 6151 is the only section of Chapter 62 which relates to the time and place for payment of tax, and since that section is not applicable to the situation before us, we return to the language of § 6601.

For emphasis we quote again from § 6601(c), which provides that the "last date prescribed for payment of the tax shall be determined under chapter 62 [which we have found to be inapplicable] with the application of the *following rules:*" (Emphasis supplied.).

One of the "following rules" is § 6601 (c) (4), which provides:

"(4) Last date for payment not otherwise prescribed.—In the case of taxes payable by stamp and in all other cases in which the last date for payment is not otherwise prescribed, the last date for payment shall be deemed to be the date the liability for tax arises (and in no event shall be later than the date notice and demand for the tax is made by the Secretary or his delegate)."

The determinative point under § 6601 (c) (4) as applied to the present case is the date when liability for accumulated earnings tax arises.

For the reasons hereinabove stated, and particularly because the tax is not self-assessing, we interpret §§ 531–535 as giving rise to accumulated earnings tax liability only after the Commissioner has given notice and demand for payment.

Although we have followed a somewhat different line of reasoning, we reach the conclusion stated by the Court of Claims as an alternative ground for its decision in Motor Fuel Carriers, Inc. v. United States, *supra,* that under § 6601(a) and (c) a taxpayer is liable for interest on an unpaid § 531 levy only between the receipt of notice and demand and payment of the tax. 420 F.2d at 708.

The basis of the decision of the District Court that interest begins to run from the due date of the tax return is that the accumulated earnings tax is not an "assessable penalty, additional amount, or addition to the tax" within the meaning of § 6601(f) (3).[1]

---

1. 26 U.S.C. § 6601(f) (3):

"(3) Interest on penalties, additional amounts, or additions to the tax.—Interest shall be imposed under subsection (a) in respect of any assessable penalty, additional amount, or addition to the tax only if such assessable penalty, additional amount, or addition to the tax is not paid within 10 days from the date of notice and demand therefor, and in such

The Government relies upon Revenue Ruling 66–237 [2] to the same effect. The Court of Claims held to the contrary in Motor Fuel Carriers, Inc. v. United States, *supra*. We do not find it necessary to determine whether the accumulated earnings tax is a penalty, additional amount or addition to the tax within the meaning of § 6601(f)(3). Our decision is founded upon the language of § 6601(a) and (c), giving due consideration to the purpose, mode of determination and mechanics of assessment of the accumulated earnings tax.

Reversed and remanded with instructions to enter judgment for the taxpayers in the amounts to which they are entitled under this opinion.

## APPENDIX A
## FINDINGS OF FACT.

1. These related actions are for the refund of interest paid by the various plaintiffs in the total amount of $272,866.83.

2. J. Graham Brown was the principal corporate officer and principal shareholder of all four plaintiff corporations.

3. These cases were consolidated for trial and were submitted to the Court on the basis of the pleadings and stipulations filed. The admissions of the parties and the stipulations filed are incorporated herein by reference.

4. (a) The plaintiff Ray E. Loper Lumber Company, Inc., timely filed its corporate income tax returns for the years 1954 through 1960 with the District Director of Internal Revenue, Louisville, Kentucky and paid the taxes shown to be due on the face of the returns.

(b) After an audit of these returns by an agent of the Internal Revenue Service, assessments were made on July 9, 1965, against the Ray E. Loper Lumber Company, Inc., for the accumulated earnings tax provided by Section 531 of the 1954 Code plus interest from the date the returns were due to the date of assessment as follows:

| Year | Tax | Interest | Total |
|---|---|---|---|
| 1954 ..... | $ 7,104.99 | $ 4,388.25 | $ 11,493.24 |
| 1955 ..... | 27,980.93 | 15,603.01 | 43,583.94 |
| 1956 ..... | 21,962.20 | 10,929.05 | 32,891.25 |
| 1957 ..... | 8,531.70 | 3,733.73 | 12,265.43 |
| 1958 ..... | 17,268.10 | 6,520.95 | 23,789.05 |
| 1959 ..... | 48,236.04 | 15,321.22 | 63,557.26 |
| 1960 ..... | 40,311.75 | 10,385.52 | 50,697.27 |
| | $171,395.71 | $66,881.73 | $238,277.44 |

(c) The accumulated earnings tax portion of each assessment was paid on July 1, 1965. The interest portion of each assessment was paid on April 15, 1966. Separate claims for refund for each of the years 1954 through 1960 were filed by the plaintiff on June 17, 1966. The plaintiff alleged in its claims that it was entitled to a refund of the interest that it had paid from the date the returns were due to the date of assessment. The refund claims for the years 1957 through 1960 were denied on November 27, 1966. The refund claims for the years 1954 through 1956 were neither allowed nor disallowed but had been filed for more than six months before plaintiff filed this action.

5. (a) The plaintiff W. P. Brown and Sons Lumber Company filed its corporate income tax returns for the years 1954 through 1960 with the District Director of Internal Revenue, Louisville, Kentucky, and paid the tax shown to be due on the face of the returns.

(b) After an audit of these returns by an agent of the Internal Revenue Service, assessments were made on July 9, 1965, against the W. P. Brown and Sons Lumber Company for the accumulated earnings tax provided by Section 531 of the 1954 Code plus interest from the date the returns were due to the date of assessment as follows:

| Year | Tax | Interest | Total |
|---|---|---|---|
| 1954 ..... | $ 4,791.35 | $ 2,959.28 | $ 7,750.63 |
| 1955 ..... | 4,333.25 | 2,416.25 | 6,749.50 |
| 1956 ..... | 5,955.43 | 2,963.60 | 8,919.03 |
| 1957 ..... | 45,742.63 | 19,512.99 | 65,255.62 |
| 1958 ..... | 63,988.30 | 23,708.07 | 87,696.37 |
| 1959 ..... | 43,527.47 | 13,426.84 | 56,954.31 |
| 1960 ..... | 63,075.74 | 16,250.12 | 79,325.86 |
| | $231,414.17 | $81,237.15 | $312,651.32 |

case interest shall be imposed only for the period from the date of the notice and demand to the date of payment."

2. 1966–2 Cum.Bull. 508.

(c) The accumulated earnings tax portion of each assessment was paid on July 1, 1965. The interest portion of each assessment was paid on April 15, 1966. Separate claims for refund for each of the years 1954 through 1960 were filed on June 17, 1966. The plaintiff alleged in its claim that it was entitled to a refund of the interest that it had paid from the date the returns were due to the date of assessment. The refund claim for the year 1957 was denied on November 25, 1966. The refund claims for the years 1955, 1956, and 1958 through 1960 were denied on December 19, 1966. The refund claim for the year 1954 was neither allowed nor disallowed but had been filed for more than six months before plaintiff filed this action.

6. (a) W. P. Brown and Sons Lumber Company is the successor by merger on December 1, 1956, with its subsidiary, The Brown Wood Preserving Company. The Brown Wood Preserving Company filed its corporate income tax returns for the calendar years 1954 and 1955 and the partial year 1956 with the District Director of Internal Revenue, Louisville, Kentucky, and paid the taxes shown to be due on the face of the returns.

(b) After an audit of these returns by an agent of the Internal Revenue Service, assessments were made on April 15, 1966, for the accumulated earnings tax provided by Section 531 of the 1954 Code plus interest from the date the returns were due to the date of assessment as follows:

| Year | Tax | Interest | Total |
|---|---|---|---|
| 1954 ..... | $ 28,257.71 | $17,452.82 | $ 45,710.53 |
| 1955 ..... | 39,543.82 | 22,050.83 | 61,594.65 |
| 1956 ..... | 81,287.81 | 40,857.71 | 122,145.52 |
| | $149,089.34 | $80,361.36 | $229,450.70 |

(c) The accumulated earnings tax portion of each assessment was paid by W. P. Brown and Sons Lumber Company on July 1, 1965. The interest portion of each assessment was paid on April 15, 1966. Separate claims for refund for each of the years 1954 through 1956 were filed on June 17, 1966. The plaintiff alleged in its claims that it was en-

titled to a refund of the interest that it had paid from the date the returns were due to the date of assessment. The refund claims for 1955 and 1956 were disallowed on November 25, 1966. The refund claim for 1954 was neither allowed nor disallowed but had been filed for more than six months before plaintiff filed this action.

7. (a) The W. P. Brown and Sons Lumber Company is also the successor by merger on February 28, 1963, with its wholly owned subsidiary, Broadway and Fourth Avenue Realty Company. Broadway filed its corporate income tax returns for the years 1958 through 1960 with the District Director of Internal Revenue, Louisville, Kentucky and paid the taxes shown to be due on the face of the returns.

(b) After an audit of these returns by an agent of the Internal Revenue Service, assessments were made on April 2, 1965, against the W. P. Brown and Sons Lumber Company for the accumulated earnings tax provided by Section 631 [sic] of the 1954 Code plus interest from the date the returns were due to the date of assessment as follows:

| Year | Tax | Interest | Total |
|---|---|---|---|
| 1958 ..... | $ 37,731.22 | $13,651.47 | $ 51,382.69 |
| 1959 ..... | 27,960.88 | 8,438.82 | 36,399.70 |
| 1960 ..... | 54,562.97 | 13,193.77 | 67,756.74 |
| | $120,255.07 | $35,284.06 | $155,539.13 |

(c) The accumulated earnings tax portion of each assessment was paid by W. P. Brown and Sons Lumber Company on March 26, 1965. The interest portion of each assessment was paid on April 15, 1966. Separate claims for refund for each year were filed on June 17, 1966. The plaintiff alleged in its claims that it was entitled to a refund of the interest that it had paid from the date the returns were due to the date of assessment. These refund claims were disallowed on November 25, 1966.

8. (a) The plaintiff Brown Lumber Company filed its corporate income tax returns for the years 1954 through 1957 and for 1960 with the District Director of Internal Revenue, Louisville, Ken-

tucky, and paid the taxes shown to be due on the face of the returns.

(b) After an audit of these returns by an agent of the Internal Revenue Service, assessments were made on July 9, 1965, against the Brown Lumber Company for the accumulated earnings tax provided by Section 531 of the 1954 Code plus interest from the date the returns were due to the date of assessment as follows:

| Year | Tax | Interest | Total |
|------|-----|----------|-------|
| 1954 . . . . . . . . | $ 3,312.87 | $2,046.13 | $ 5,359.00 |
| 1955 . . . . . . . . | 3,265.06 | 1,820.70 | 5,085.76 |
| 1956 . . . . . . . . | 465.64 | 231.72 | 697.36 |
| 1957 . . . . . . . . | 2,981.53 | 1,304.81 | 4,286.34 |
| 1960 . . . . . . . . | 5,929.70 | 1,527.67 | 7,457.37 |
| | $15,954.80 | $6,931.03 | $22,885.83 |

(c) The accumulated earnings tax portion of each assessment was paid on July 1, 1965. The interest portion of each assessment was paid on April 15, 1966. Separate claims for refund for each of the years 1954 through 1957 and for 1960 were filed on June 17, 1965. The plaintiff alleged in its claims that it was entitled to a refund of the interest that it had paid from the date the returns were due to be filed to the date of assessment. The refund claim for 1960 was disallowed on November 25, 1966. The refund claims for 1954 through 1957 have neither been allowed nor disallowed but had been filed for more than six months before plaintiff filed this action.

9. (a) The plaintiff The Mobile & Gulf Railroad Company timely filed its corporate income tax returns for the years 1955, 1956 and 1960 with the District Director of Internal Revenue, Louisville, Kentucky, and paid the taxes shown to be due on the face of the returns.

(b) After an audit of these returns by an agent of the Internal Revenue Service, assessments were made on July 9, 1965, against The Mobile & Gulf Railroad Company for the accumulated earnings tax provided by Section 531 of the Internal Revenue Code of 1954, plus interest from the date the returns were due to the date of assessment as follows:

| Year | Tax | Interest | Total |
|------|-----|----------|-------|
| 1955 . . . . . . . . | $1,796.66 | $1,001.87 | $2,798.53 |
| 1956 . . . . . . . . | 1,907.62 | 949.28 | 2,856.91 |
| 1960 . . . . . . . . | 894.06 | 230.34 | 1,124.40 |
| | $4,598.34 | $2,181.50 | $6,779.84 |

(c) The accumulated earnings tax portion of each assessment was paid on July 1, 1965. The interest portion of each assessment was paid on April 15, 1966. Separate claims for refund for each of the years 1955, 1956, and 1960 were filed by the plaintiff on June 16, 1966. The plaintiff alleged in its claims that it was entitled to a refund of the interest that it had paid from the date the returns were due to the date of assessment. The refund claims were denied on February 21, 1967.

10. There are 40 different and alternative forms which are provided by the Treasury Department to be used by corporations in reporting their taxes. Included on these 40 forms is a total of approximately 1128 questions dealing with income, expenses and taxes due. There is no provision in or part of any of these forms for the reporting of the amount subject to Section 531, nor are there any schedules or instructions for reporting the item. In administering Sections 531 and its statutory predecessors, however, it has always been the custom of the Internal Revenue Service to assess and collect interest on this tax from the due date of the return to the date of assessment as in the case of all other tax assessments. Until recently, this practice was never challenged.

11. The aggregate amount of accumulated earnings tax assessed against and collected from the plaintiff corporations here is $692,707.43. The aggregate amount of interest assessed against and collected from the plaintiff corporations is $272,866.83.