**In re John Hathaway EVANS, Jr., Debtor.**

**John Hathaway EVANS, Jr., Appellee/Cross–Appellant,**

**v.**

**UNITED STATES of America, Appellant/Cross–Appellee.**

Civ. A. No. 92 N 1684.

Bankruptcy No. 90 B 17558 PAC.

Adv. No. 91 B 2028 SBB.

United States District Court, D. Colorado.

July 25, 1994.

Christopher E. Bench, Aurora, CO, for John Evans, Jr.

William G. Pharo, Asst. U.S. Atty., Karen Lynne Baker, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for U.S.

## ORDER AND MEMORANDUM OF DECISION

NOTTINGHAM, District Judge.

This is an appeal from an order and judgment entered by the United States Bankruptcy Court for the District of Colorado. The parties dispute the bankruptcy court's calculation of the amount of penalty which was assessed pursuant to I.R.C. § 6672 (West Supp.1993), and have filed cross-appeals. Jurisdiction is based on 28 U.S.C.A. § 158(a) (West 1993).

## FACTS

Debtor–Appellee John Hathaway Evans, Jr. ("Evans") was president of a corporation called Passage Home Communications ("Passage Home"). Prior to May 1989, Passage Home neglected to file its tax returns or make any payment on its federal withholding taxes, pursuant to the Federal Insurance Contributions Act, I.R.C. §§ 3101–3128 (West 1989) [hereinafter "FICA taxes"], and its income taxes, pursuant to I.R.C. §§ 3401–3406 (West 1989) [hereinafter "form 941 taxes"], for the second, third, and fourth quarters of 1988 and the first quarter of 1989. (Br. of Appellant United States at 6–7 [filed Nov. 9, 1992] [hereinafter "Appellant's Br."]; Joint Stipulation of Facts ¶ 1 [filed June 1, 1992].) Passage Home's form 941 tax returns revealed the following tax liabilities:

| Period | Total Tax | Non–Trust Fund | Trust Fund |
|--------|-----------|----------------|------------|
| 2nd Quarter 1988 | $6,964.97 | $ 2,201.49 | $ 3,763.48 |
| 3rd Quarter 1988 | $28,388.76 | $ 8,675.87 | $19,712.89 |
| 4th Quarter 1988 | $34,272.29 | $10,111.16 | $24,161.13 |
| 1st Quarter 1989 | $44,901.31 | $13,456.02 | $31,445.29 |
| Total: | $114,527.33 | $34,444.54 | $80,082.79 |

(Appellant's Br. at 7 [Joint Stipulation of Facts ¶ 2].) [1]

On May 18, 1989, Evans met with Sharon Rye, a revenue officer for the Internal Revenue Service ("IRS"). Rye demanded full payment of the taxes owed. (Appellant's Br. at 7 [Pl.'s Ex.L ¶¶ 2 & 6]; Memorandum Opinion and Order, Relevant Facts ¶ 4 [filed July 17, 1992] [hereinafter "Order"].) Evans gave Rye a check for $15,000 drawn on Passage Home's account. (Appellant's Br. at 7 [Joint Stipulation of Facts ¶ 4].) Rye directed that the check be applied to the non-trust fund portion of the form 941 tax liabilities for the second quarter ($2,201.01) [2] and third quarter ($12,798.99) of 1988. (Joint Stipulation of Facts ¶¶ 4–5.) This check completely paid the principal amount of the non-trust fund taxes for these quarters; therefore, the remainder of the check was applied to penalties and interest on the form 941 taxes. (Appellant's Br. at 8 [Def.'s Ex. 11 ¶ 23].)

On May 25, 1989, the IRS received a check for $25,000 drawn on Passage Home's account. Rye directed that $23,093.88 be applied to the non-trust fund taxes, and that $1,906.12 be applied to the corporation's Federal Unemployment Tax Act, I.R.C. §§ 3301–3311 (West 1989), taxes [hereinafter "form 940 taxes"] for 1988, penalties, and interest. (Joint Stipulation of Facts ¶¶ 6–7; Order ¶ 5.)

On June 22, 1989, the IRS received a check for $25,000 drawn on Passage Home's account. Rye directed that the funds be applied to the non-trust fund taxes. (Joint Stipulation of Facts ¶ 9.) Again, because this check completely paid the principal amount of the non-trust fund taxes, the remainder was applied to the associated interest and penalties on the form 941 taxes. (Appellant's Br. at 9 [Def.'s Ex. 11 ¶¶ 19, 25, 31 & 37].)

On July 25, 1989, the IRS received a check for $10,000 drawn on Passage Home's account. Rye directed that the funds be applied to the non-trust fund taxes, associated penalties, and interest. (Joint Stipulation of Facts ¶¶ 10–11.) Since the principal amount of the non-trust fund taxes had been completely paid, the entire amount was applied to penalties and interest on the form 941 taxes. On July 26, 1989, the IRS assessed the form 941 taxes along with all related penalties and interest. (Joint Stipulation of Facts ¶ 15.)

On August 30, 1989, the IRS received a check for $5,000 drawn on Passage Home's account. Rye directed that $1,354.11 be paid to interest, $1,092.27 be paid to penalties, and $2,553.44 be applied to the trust fund portion of Passage Home's tax liability. (Br. of Appellee/Cross Appellant, John Hathaway Evans, Jr., Statement of the Facts ¶ 2 [Def.'s Ex. 11 ¶ 41] [filed Nov. 23, 1992] [hereinafter "Appellee's Br."]; *contra* Joint Stipulation of Facts ¶¶ 12–13; Order, Relevant Facts ¶ 10.)

On November 17, 1989, Passage Home filed a voluntary petition for bankruptcy pursuant to chapter 11 of the Bankruptcy Code, 11 U.S.C.A. §§ 1101–1174 (West 1993). (Order, Relevant Facts ¶ 11.) On March 12, 1990, the IRS made an assessment of liability pursuant to I.R.C. § 6672 (West Supp.1993), for the willful failure of the debtor to collect, truthfully account for, and pay over the federal withholding taxes of Passage Home for the four quarters in question.[3] The assess-

---

1. The significance of "Non–Trust Fund" and "Trust Fund" taxes will be explained below.

2. The discrepancy in this figure, as well as the discrepancies in other figures contained in this order, are not explained by the parties or the record.

3. Section 6672 provides in part:

 Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or

ment was in the amount of $80,082.76. (Joint Stipulation of Facts ¶ 16.)

On November 14, 1990, Evans filed a petition for bankruptcy under chapter 7 of the Bankruptcy Code, 11 U.S.C.A. §§ 701–766 (West 1993). On January 16, 1991, the IRS filed its "Proof of Claim" in the Passage Home bankruptcy proceeding. (Appellee's Br., Statement of the Facts ¶ 3 [Pl.'s Ex. E].) In this document, the IRS credited the entire amount of payments, approximately $80,000, to tax obligations, rather than to penalties and interest. The IRS claimed that only $36,449.45 in form 941 taxes remained due. Nevertheless, Evans was assessed $80,082.79 in section 6672 penalties. (Appellee's Br., Statement of the Facts ¶ 3 [Pl.'s Ex. E; Def.'s Ex. 11 ¶ 9].) On February 13, 1991, Evans received his discharge. (Appellant's Br. at 11.) On December 19, 1991, Evans filed an adversary "Complaint to Determine Dischargeability of Debt, Objecting to Claim and for Injunctive Relief" against the government in order to determine the amount of the section 6672 penalty. (Id. at 6.) As of January 8, 1992, the IRS had seized or received voluntary payments in the amount of $16,512.45 for the section 6672 penalties. (Order, Relevant Facts ¶ 14.)

On June 3, 1992, the bankruptcy court held a trial on Evans' adversary complaint. On July 17, 1992, the bankruptcy court issued its Order. (Appellant's Br. at 11.) The bankruptcy court held that Passage Home's liability for penalties and interest on the form 941 taxes was payable only after the IRS had given proper notice and demand. (Id. at 11–12.) Since notice and demand had not occurred until July 26, 1989, the IRS had inappropriately applied payments made prior to this date to penalties and interest which had accrued but had not yet been assessed. Thus, of the approximately $75,000 paid before July 26, only $34,444.52 (the principal amount of the non-trust fund portion of the form 941 taxes) could be applied to non-trust fund liabilities; the remainder ($40,555.48) should have been applied to the trust fund principal, leaving a balance due for penalties

and interest on the non-trust fund taxes of $39,527.31. Since the August 30, 1989, payment of $5,000 was made after assessment, the bankruptcy court found that the full amount should have been applied to the $39,527.31. (Id. at 12.)

On August 5, 1992, Evans filed a motion to amend judgment in order to include a payment of $3,080 which had been paid by another taxpayer, but had been excluded by the bankruptcy court. On August 12, 1992, amended judgment was entered, leaving the IRS with a total claim of $23,014.86, plus interest from March 12, 1990, to January 28, 1992, to be calculated in accordance with applicable IRS procedures. (Id. at 13.)

Each of the parties appeals the bankruptcy court's decision. The questions raised on appeal are as follows: (1) whether the bankruptcy court erred when it concluded that the IRS could not apply payments to accrued but unassessed interest and penalties; (2) whether the bankruptcy court erred when it reduced the section 6672 penalty by the total amount of payment without allowing for interest which accrued between payments; and (3) whether the bankruptcy court erred when it concluded that the IRS could re-allocate to payment of penalties and interest a voluntary payment that the IRS had applied, for purposes of its "Proof of Claim" in the related corporate bankruptcy, toward payment of tax liabilities. I conclude as follows: (1) the bankruptcy court erred when it did not permit the IRS to apply Evans' payments to both the principal tax and the interest on this tax; (2) the bankruptcy court erred when it reduced the section 6672 penalty by the total amount of payment without allowing for interest which accrued between payments; and (3) the bankruptcy court properly permitted the IRS to re-allocate the payment made after assessment to penalties and interest on the non-trust fund taxes.

## ANALYSIS

 Legal determinations by the bankruptcy court are reviewed de novo. In re Branding Iron Motel, Inc., 798 F.2d 396,

---

defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable for a penalty equal to the total

amount of the tax evaded, or not collected, or not accounted for and paid over.

I.R.C. § 6672(a) (West Supp.1993).

399–400 (10th Cir.1986). In contrast, factual determinations are reviewed under a clearly erroneous standard. Fed.R.Bankr.P. 8013; *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573–75, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985); *In re Mullet*, 817 F.2d 677, 678 (10th Cir.1987). Since the issues raised by the parties concern legal determinations only, I review them de novo.

### 1. Pre–Assessment Payments

■ The Internal Revenue Code [hereinafter "the Code"] requires employers to withhold from their employees' paychecks money representing employees' personal income taxes and social security taxes. I.R.C. §§ 3102(a), 3402(a) (West 1989). Because federal law requires employers to hold these funds in "trust for the United States," I.R.C. § 7501(a) (West 1989), these taxes are commonly referred to as "trust fund" taxes. *Slodov v. United States*, 436 U.S. 238, 242–43, 98 S.Ct. 1778, 1782–83, 56 L.Ed.2d 251 (1978). "Non-trust fund" taxes generally refer to other corporate tax liabilities, such as corporate income taxes (form 941 taxes) and the employer's share of FICA taxes. *In re Avildsen Tools & Machine, Inc.*, 794 F.2d 1248, 1249 n. 1 (7th Cir.1986). Should employers fail to pay trust fund taxes, the government may collect an equivalent sum directly from the officers or employees of the employer who are responsible for collecting the tax. *See* I.R.C. § 6672. These individuals are usually referred to as the "responsible" individuals. *Slodov*, 436 U.S. at 244–45, 98 S.Ct. at 1783–84. *See also United States v. Energy Resources Co.*, 495 U.S. 545, 546, 110 S.Ct. 2139, 2140–41, 109 L.Ed.2d 580 (1990).

■ In this case, there is no dispute that Evans was the responsible party for the corporation and that the corporation neglected to pay its form 941 taxes and its FICA taxes, pursuant to sections 3102(a) and 3402(a) of the Code. I.R.C. §§ 3102(a), 3402(a). (*See* Appellee's Br. at 3.) What the parties dispute is the amount of trust fund taxes owed at the time Passage Home petitioned for bankruptcy. When a corporation declares bankruptcy, the responsible person is subject to section 6672 liability only for the trust fund taxes not paid over—not for any non-trust fund taxes or the penalties and interest associated with the non-trust fund taxes. *Williams v. United States*, 939 F.2d 915, 916 (11th Cir.1991).

■ Because the bankruptcy laws limit the government's recovery to trust fund taxes, the IRS has developed a policy which governs the application of payments made by the corporation prior to bankruptcy. In order to minimize the loss to the government for the unpaid non-trust fund taxes, the IRS first applies involuntary payments to the principal on non-trust fund taxes, then to penalties and interest assessed on these taxes, before applying any payments to the trust fund taxes. *Avildsen Tools*, 794 F.2d at 1251. In this case, the revenue officer followed this policy.

Passage Home, by way of Evans, remitted approximately $75,000 in payments before filing for bankruptcy under chapter 11. The revenue officer applied the payments to the principal on the non-trust fund taxes which was owing at the time the payments were made. Once this principal was completely paid, the revenue officer applied the remainder of the payments to interest and penalties on the non-trust fund taxes. However, the IRS did not officially assess the penalties and interest on the non-trust fund taxes until July 26, 1989, *after* Passage Home had remitted the $75,000 in payments. According to Evans, since the IRS had not given notice and demand for the penalties and interest on the non-trust fund taxes, neither had been properly assessed and, as a consequence, were not yet due and owing. Thus, instead of applying the excess payments to as yet unassessed penalties and interest on the non-trust fund taxes, the revenue officer should have applied the excess payments to the principal on the trust fund taxes. In order for me to determine whether the excess payment was properly applied to the interest and penalties, I must determine if notice and demand was required before the interest and penalties were considered due and owing.

■ Penalties were assessed in this case pursuant to sections 6651 and 6656. I.R.C. §§ 6651, 6656 (West 1989). The government

acknowledges that these penalties are not self-assessing. (Appellant's Br. at 15 n. 8.) Hence, there must be a formal administrative determination by the IRS before these penalties may be imposed. *See Motor Fuel Carriers, Inc. v. United States,* 420 F.2d 702, 707, 190 Ct.Cl. 385 (1970). Although the government suggests that the revenue officer's notes reflected such an administrative determination, (*see* Appellant's Br. at 15 n. 8), I do not believe these notes constitute the type of formal notice and demand contemplated by both the Code and *Motor Fuel Carriers.*

Since notice and demand were required with regard to the penalties, it was not appropriate for the revenue officer to apply the excess payments, once the principal had been paid, to payment of the penalties until after notice and demand was given. The bankruptcy court's determination with respect to this issue is therefore correct. However, I do not adopt the bankruptcy court's analysis regarding the *interest* assessed on the underlying section 3102(a) and section 3402(a) taxes.

In 1989, provisions for interest in the Code were contained in chapter 67. The parties agree that either section 6601(a) or section 6601(e)(1),[4] both of which fall within chapter 67, governs the instant case. Section 6601(a) provides:

> **(a) General rule.**—If any amount of tax imposed by this title (whether required to be shown on a return, or to be paid by stamp or by some other method) is not paid on or before the last date prescribed for payment, interest on such amount at the underpayment rate established under section 6621 shall be paid for the period from such date to the date paid.

I.R.C. § 6601(a) (West 1989). Section 6601(e)(1) provides:

> **(e) Applicable rules.**—Except as otherwise provided in this title—
>
> > **(1) Interest treated as tax.**—Interest prescribed under this section on any tax shall be paid upon notice and demand, and shall be assessed, collected, and paid in the same manner as taxes. Any ref-

erence in this title (except subchapter B of chapter 63, relating to deficiency procedures) to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax.

I.R.C. § 6601(e)(1) (West 1989). The distinction between interest assessed under section 6601(a), as opposed to section 6601(e)(1), has been explained as follows:

> The question of when interest ought to begin accruing on an amount depends on when the amount was first owed by the taxpayer. Where an amount is assessed at the time of notice and demand, which is the universal situation in chapter 68, the amount is first owed at that time, and the IRS gets paid in real dollars if interest then begins to accrue. Until notice and demand, the taxpayer does not owe the amount assessed, even though that amount may have some relation to a prior amount owed and unpaid. See, e.g., § 6672(a) (assessment equal to amount owed but not paid of tax "willfully" evaded). In contrast, when an amount is self-assessable, the taxpayer owes the amount in question at the time he should have reported it. (Citations omitted.) If the government is to collect an assessment in real dollars, interest must begin to accrue when the tax should have been reported. Thus in self-assessing situations, § 6601(a) governs, while in non-self-assessing situations, § 6601(e)(2) governs.

*Latterman v. United States,* 872 F.2d 564, 567 (3d Cir.1989); *see also Motor Fuel Carriers,* 420 F.2d at 707; *Ray E. Loper Lumber, Co. v. United States,* 444 F.2d 301, 304 (6th Cir.1971); *Bardahl Mfg. Corp. v. United States,* 452 F.2d 604, 605 (9th Cir.1971).

█ The mechanism the courts have used in determining whether a tax, and the interest on the tax, is self-assessing turns primarily on whether or not an administrative determination is required in order for the tax or interest to be imposed. Typically, taxes which are reportable on the tax return, and are required to be reported on the return, are considered self-assessable. *Motor Fuel Carriers,* 420 F.2d at 708. An assessment of

---

**4.** The sections referred to in this order were the sections in effect at the time Passage Home's tax return was due and are the operable sections for purposes of my analysis.

a tax is made "by recording the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by the Secretary." I.R.C. § 6203 (West 1989). Assessment, under the Code, is essentially a bookkeeping notation made when the Secretary or his delegate establishes an account against the taxpayer on the tax rolls. *Laing v. United States*, 423 U.S. 161, 170 n. 13, 96 S.Ct. 473, 479 n. 13, 46 L.Ed.2d 416 (1976); *United States v. Krasnow*, 548 F.Supp. 686, 688 (S.D.N.Y.1982).

■ In this case, there is no dispute that the section 3102(a) and section 3402(a) taxes were self-assessing. (*See* Appellee's Br. at 7.) Section 31.6011(a)–4(a)(1) of the Treasury Regulations requires all employers to report the amount of withheld taxes on their payroll tax returns (form 941), which must be filed every calendar quarter and are due on the last day of the first month following the quarter. *See* Treas.Reg. § 31.6071(a)–1(a) (1989); *Baasch v. United States*, 742 F.Supp. 65, 68 (E.D.N.Y.1990), *aff'd*, 930 F.2d 911 (2d Cir.1991). These amounts were due, at the latest, on the thirtieth day following the end of the quarter. *See* Treas.Reg. § 31.6302(c)–1(a)(1)(iv) (1989). Afterwards, the unpaid taxes self-assessed—no notice and demand was required. There is no question that section 3102(a) and section 3402(a) taxes are payable without notice and demand. *See, e.g., Marvel v. United States*, 719 F.2d 1507 (10th Cir.1983) (there is no requirement that before liability for employment taxes accrues, notice of deficiency or assessment be given); *Enochs v. Green*, 270 F.2d 558 (5th Cir.1959) (no deficiency notice is required for social security and withholding taxes); *cf. Macatee, Inc. v. United States*, 214 F.2d 717 (5th Cir.1954) (taxpayer became liable for employment and social security taxes prior to assessment and prior to time demands for payment were made); *Kadah v. United States*, 600 F.Supp. 1302 (N.D.N.Y.1985) (tax liability of employer for failure to pay withholding and FICA taxes arises when wages are paid, rather than on due date of tax return). The only question which remains is whether the interest was likewise self-assessing.

The bankruptcy court found that interest was not due and owing until notice and demand had been given. In reaching its decision, the bankruptcy court relied on *First National Bank in Palm Beach v. United States*, 591 F.2d 1143 (5th Cir.1979). In *First National Bank in Palm Beach*, the Fifth Circuit reasoned as follows:

> The liability of a corporation for federal withholding taxes is payable on the due date of the return, which is, at the latest, on the thirtieth day following the end of the quarter; it becomes payable without the necessity of assessment or of notice and demand. 26 U.S.C. § 6151(a). In contrast, although the liability of a corporation for interest and penalties for late payment of withholding taxes arises immediately upon the failure of the corporation to pay withholding taxes on time, that debt is payable only "upon notice and demand." 26 U.S.C. § 6659(a)(1). The statute does not compel the IRS to exact the penalties, and it appears that in some instances they may not be imposed. See 26 U.S.C. §§ 6653, 6656.

*Id.* at 1147 (citations omitted). The court goes on to cite a string of cases which deal with various *penalties* which may be imposed for non-payment of taxes. The Fifth Circuit cites to "26 U.S.C. § 6659(a)(1)" as support for its conclusion. In 1979 (when the opinion was delivered), section 6659(a)(1) provided:

> **(a) Additions treated as tax.**—Except as otherwise provided in this title—
>
> > (1) The additions to the tax, additional amounts, and penalties provided by this chapter shall be paid upon notice and demand and shall be assessed, collected and paid in the same manner as taxes.

I.R.C. § 6662(a)(1) (West 1989).[5] Section 6659 falls within chapter 68, subchapter A of the Code which governs "Additions and Penalties."

The Fifth Circuit's citation to section 6659 reveals the court's confusion between penalties and interest under the Code. Both penalties and interest on penalties require notice

---

5. Section 6659 was renumbered 6660 and is now set out as section 6662. *See* I.R.C. § 6659, His-torical and Statutory Notes (Prior Provisions) (West 1989); *Krasnow*, 548 F.Supp. at 687 n. 3.

and demand.[6] Interest on the penalties does not begin to accrue until after notice and demand is given. In contrast, interest on the tax begins to accrue once the due date for underlying tax has passed; no notice and demand is required. *See United States v. Toyota of Visalia*, 772 F.Supp. 481, 488 (E.D.Cal.1991) ("There is no authority ... that requires the Internal Revenue Service to make a separate assessment of interest on an assessed tax liability in order to collect that interest."), *aff'd*, 988 F.2d 126 (9th Cir. 1993).

In this case, the underlying section 3102 and section 3402 taxes were self-assessing. It is logical to assume that the interest on these taxes was likewise self-assessing. If this were not the case—*i.e.*, if interest on self-assessing taxes required notice and demand—then the distinction between self-assessing interest (section 6601[a]) and non-self-assessing interest (section 6601[e][1]), drawn by both the Code and the *Latterman* court, would be meaningless. Moreover, interpreting the Code provisions such that interest begins to accrue *before* notice and demand is given, but is not *payable* until *after* notice and demand, creates an artificial distinction which the Code does not address. Once interest or penalties begin *accruing*, they are considered to be due and owing under the Code. *See e.g.*, I.R.C. § 6601(e)(2).

Since the bankruptcy court incorrectly concluded that interest on the underlying taxes was not payable until after notice and demand was given, the bankruptcy court was in error. The revenue officer appropriately applied Evans' various payments, once the principal was satisfied, to the interest which had accrued on this principal as of the date the payment was made. Once the principal and interest were covered, the revenue officer should have applied any remaining funds to the principal on the trust fund taxes. Unfortunately, the bankruptcy court did not make any findings which distinguish between

the amount of principal, interest, penalties, and interest on the penalties for each of the four quarters. Although the government supplies a partial breakdown, (*see* Appellant's Br. at 10), it is unclear at what point in time the interest figures were determined and whether these interest figures included interest both on the principal tax and on the penalties. Accordingly, this case must be remanded to the bankruptcy court for further findings consistent with this order.

### 2. Adjustment to Section 6672 Penalty

■ In the government's second point of error, it argues that the bankruptcy court erred in reducing the section 6672 penalty by the total amount of payments. In its decision, the bankruptcy court totalled all eight payments and deducted that figure from the total amount of the section 6672 penalty which was assessed on March 12, 1990. Since notice and demand on the section 6672 penalty was given on March 12, 1990, interest continued to run from that date until the payments were made in full. The payments made after the penalty was assessed merely stopped the accrual of interest on that portion of the penalty to which the payments were applied; the payments did not negate the interest which had already accrued. Accordingly, I find that the bankruptcy court's failure to provide for interest on the penalty which had accrued between the payments was error. (*See* Appellee's Br. at 1.) The bankruptcy court should recalculate the total amount of liability consistent with this finding.

### 3. Re–Allocation of Payment

On January 16, 1991, the IRS filed its "Proof of Claim" in the Passage Home bankruptcy proceeding. In its "Proof of Claim," the IRS applied $38,649.38, along with the additional $5,000 paid by Passage Home on August 30, 1989, as payment toward trust fund taxes rather than payment of penalty and interest on the non-trust fund taxes.[7]

---

**6.** Any interest on the penalties would be governed by section 6601(e)(2). Under section 6601(e)(2), interest on a penalty or additional tax begins to run as of the date notice and demand are given, unless the full amount is remitted by

the taxpayer within ten days. I.R.C. § 6601(e)(2) (West 1989).

**7.** The IRS had originally applied $1,906.12 to an unrelated liability, but later conceded that this

The bankruptcy court held that the IRS could properly apply the $5,000 payment to the non-trust fund penalties and interest since the payment was made after the penalties and interest were assessed. Evans objects to the IRS's re-allocation of this amount from the trust fund taxes to the non-trust fund penalties and interest. (Appellee's Br. at 10 n. 3.) According to Evans, the government is estopped from applying the payments differently when calculating the section 6672 assessment than it did when calculating the form 941 tax liabilities in its "Proof of Claim."[8]

Evans argues that the "Proof of Claim" is an evidentiary admission of the amount of tax due. *Dugan v. EMS Helicopters, Inc.*, 915 F.2d 1428, 1432 (10th Cir.1990) (allegations contained in prior complaint are considered admissions against interest). As such, Evans maintains, the doctrine of judicial estoppel precludes the government from adopting a position which contradicts the position taken in the "Proof of Claim." *In re Kessel*, 108 B.R. 281, 283 (Bankr.D.Colo.1989).

It was a disputed fact whether the $5,000 payment was initially allocated to the non-trust fund penalties and interest as opposed to the trust fund principal. Rye testified that she directed the payment to be applied to the non-trust fund portion of the tax for the first quarter of 1989. (Appellant's Reply at 7 n. 5 [Def.'s Ex. 12 ¶ 25].) Doug Edson testified that, based on his recalculations, only $2,466.56 would be applied to the non-trust fund portion of the tax, with the remainder to be applied to the trust fund portion. (*Id.* [Def.'s Ex. 11 ¶ 41].) The bankruptcy court found that the revenue officer had properly credited the $5,000 to the non-trust fund penalties and interest. (Order at 8.) According to this finding, the bankruptcy court must have concluded that Rye had, in fact, directed the $5,000 toward payment of the non-trust fund taxes. Since the parties have not provided the court with a copy of the IRS "Proof of Claim," I cannot determine if this finding by the bankruptcy court consti-

tutes clear error. Nor can I evaluate the validity of the government's claim that the IRS is not attempting to collect more than the amount of the tax assessment, including penalties and interest. (Appellant's Reply at 9.)

Even if the IRS had originally designated the $5,000 toward payment of the trust fund principal, this would not bar the IRS from re-allocating this amount so long as the re-allocation did not result in the government recovering more than the amount of tax originally assessed. *See In re Carter*, 125 B.R. 832, 835 (Bankr.D.Kan.1991). *See also Neier v. United States*, 127 B.R. 669 (D.Kan.1991) (IRS could reallocate debtor-employers' involuntary bankruptcy payments to non-trust fund taxes in order to replace incorrectly allocated payroll tax deposits before applying any payments to trust fund taxes). Thus, I cannot find that the bankruptcy court committed error in permitting the government to apply the $5,000 payment to the assessed penalties and interest.

### 4. Conclusion

On the basis of the foregoing, it is therefore

ORDERED that the decision of the bankruptcy court is REVERSED and REMANDED for further findings consistent with this order.

amount should be applied to reduce Evans' liability. (Appellant's Br. at 5 n. 1.)

8. Under 11 U.S.C.A. § 726(a)(4) (West 1993), the $26,623 in penalties claimed by the IRS in asso-

ciation with the subject taxes in the "Proof of Claim" would not have priority status and would be paid only after all other claims were satisfied. (Appellee's Br. at 11.)