**In re Ernesto ROJO, Debtor.**

**Bankruptcy No. 96–16275–BKC–AJC.**

United States Bankruptcy Court,
S.D. Florida.

June 23, 1997.

Paul G. Gill, Department of Justice, Tax Division, Washington, DC, for IRS.

Laila S. Gonzalez, Robert Sanchez and Associates, Hialeah, FL, for Debtor.

## MEMORANDUM DECISION AND ORDER OVERRULING OBJECTION TO IRS CLAIM

A. JAY CRISTOL, Chief Judge.

THIS CAUSE came before the Court on June 5, 1997, at 9:30 a.m., for an evidentiary hearing on the Debtor's Objection to Claim of IRS (the "Objection"), filed December 12, 1996 (C.P. # 11). For the reasons that follow, the Court will overrule the Objection.

### Issues for Decision

The amended proof of claim filed by the Internal Revenue Service (the "IRS") totals $81,549.09. Most of the claim consists of a trust find liability against the debtor, Ernesto Rojo (the "Debtor"), under 26 U.S.C. § 6672. The Objection does not challenge the amount of the claim. Instead, Debtor contends that "he was not an active participant or a responsible party during the period of time the corporation (California Woodwork, Inc.) became indebted to the IRS."

### The Evidence Presented to the Court

Debtor testified that he formed California Woodwork, Inc. in 1985. He incorporated the business in 1988, with himself as president and majority shareholder. The only other shareholder was Maria Caicedo, who was also secretary and treasurer. The company ceased doing business in mid–1991.

Revenue Officer Linda Simmons testified that the company had unpaid withholding tax liabilities for the first two quarters of 1989, all quarters of 1990, and the first two quarters of 1991. Under Internal Revenue Code § 6672, the Debtor was assessed a penalty in the amount of 100 percent of the unpaid trust fund liability for each of those quarters.

Debtor admits that he was the final decision maker on company matters for all the time he was in Florida. He contends, however, the he did not have the power to direct corporate affairs during the time he was in California attempting to start another cabinetry and woodworking business. This was from mid–1988 until January 1990.

Debtor testified that he had no California Woodwork, Inc. corporate checks with him while he was in California. He claims that he left the daily management of the company to Alejandro Stefanini during that time. Debtor acknowledged keeping in touch with the company by telephone, calling Caicedo and Stefanini occasionally. He said that he was never told of any corporate financial woes in those calls, nor unpaid tax liabilities, until November 1989. At that time, he testified, a prospective purchaser of the company advised the Debtor that the company had substantial unpaid tax liabilities. This information, Debtor testified, prompted the Debtor to return to Florida in January, 1990, to take over daily operations.

The Debtor always had and never relinquished corporate check signing authority even during his time in California when he was far away from the corporate checkbook. He did not give up his position as president, and status as majority shareholder, at any time.

Although Debtor makes much of his being physically removed from the company checkbook while he was in California, this did not stop him from signing at least six loan documents on behalf of the corporation from June 1988 to November 1989.[1] These documents reflect the lending of the sum of $119,000.00 from Ocean Bank to California Woodwork, Inc. in that time via eight separate loans to finance accounts receivable or for "working capital." Debtor acknowledges his signature on the loan documents, as well as on several personal guarantees of loans during the same time frame.

The Court received into evidence California Woodwork, Inc.'s checking account statements covering the months ended November 30, 1990 through April 30, 1991. In summarizing these statements for the Court, Revenue Officer Simmons observed that there were approximately $98,000.00 in deposits to and $93,000.00 in debits against the account in the six months covered by the statements.

The Debtor admitted that he allowed employees and other creditors to be paid from corporate accounts after he learned of the company's tax problems. Revenue Officer Simmons observed that the Debtor himself signed at least ten checks from January 1990 through January 1991, made payable to himself or cash, adding up to over $9,000.00.

Alejandro Stefanini testified that he worked for California Woodwork, Inc. during the time the Debtor was in California. He had worked for the Debtor before, and characterized the Debtor as a "hands on" person, who was always very much in control of his own business.

Stefanini agreed that he and Caicedo communicated with the Debtor in California. He said that the company definitely had financial problems and difficulties paying debts. Stefanini became aware of these problems within a few months after the Debtor went to California. The problems were common knowledge and the topic of discussions in the office between Stefanini and Caicedo.

*Findings of Fact and Conclusions of Law*

■ 26 U.S.C. § 6672 liability rests on the answer to two questions: (1) was the individual a "responsible person" for the periods in question, and (2) did he "willfully" fail to collect or account for and pay over trust fund taxes. Once responsible person status is established, it is that person's burden to *disprove* willfulness. *E.g., Williams v. United States,* 931 F.2d 805, 810 (11th Cir.1991), *supplemented on reh'g,* 939 F.2d 915 (11th Cir.1991). *But see In re Weinberg,* 76 B.R. 215, 217 (Bankr.S.D.Fla.1987) (individual has burden of proof on *both* issues).

■ Responsibility is a "matter of status, duty, and authority." *Williams,* 931 F.2d at 810 (quoting *Mazo v. United States,* 591 F.2d 1151, 1156 (5th Cir.1979)). Indicia of responsible person status include holding corporate office, authority to control financial affairs, authority to write checks, stock ownership, and authority to hire or fire employees. *Id.*

■ The Debtor was a responsible person of California Woodwork, Inc. for all quarters at issue. Even when he was in California, he

---

1. The loan documents and other documents referred to herein were part of Government Exhibit 1, which was admitted at hearing without objection by the Debtor.

retained the authority to sign checks, and he did, in fact, sign loan documents and personal guarantees of loans to the corporation. Additionally, the Debtor kept in touch with company employees. The business was his, and he could have ordered different corporate action at any time. The fact that he chose not to do so is irrelevant.

■ "Willfulness," for purposes of § 6672 liability, does not require a finding of fraud or bad motive. *Williams,* 931 F.2d at 810. All that is required is knowledge that payments are being made to other creditors after knowledge that the withholding tax obligation has not been paid. *Id.*

■ Willfulness also exists if the taxpayer acts with "reckless disregard of a known or obvious risk of nonpayment" of trust fund taxes. *Malloy v. United States,* 17 F.3d 329, 332 (11th Cir.1994). A responsible person cannot defeat the presumption of willfulness by claiming delegation of tax related duties to another. *E.g., McDonald v. United States,* 939 F.2d 916, 919 n. 6, *reh'g denied,* 948 F.2d 729 (11th Cir.1991), *cert. denied,* 503 U.S. 984, 112 S.Ct. 1669, 118 L.Ed.2d 389 (1992); *cf. Smith v. United States,* 894 F.2d 1549, 1554 (11th Cir.1990) (relying on advice of attorney or accountant is not a defense).

■ The Eleventh Circuit has also emphasized that a responsible person who disavows knowledge of unpaid tax liability for the first of several quarters may still be assessed with liability for the earlier quarter if he permits the corporation to continue paying creditors other than the United States.

> In the case of individuals who are responsible persons both before and after withholding tax liability accrues, there is a duty to use unencumbered funds acquired after the withholding obligation becomes payable to satisfy the obligation; failure to do so when there is knowledge of the liability, as was the case here, constitutes willfulness.

*Malloy,* 17 F.3d at 332–33 (quoting *Mazo,* 591 F.2d at 1157) (holding that responsible person on notice of risk of nonpayment by second quarter 1983 also liable for taxes owed in fourth quarter 1982).

■ Funds are considered "encumbered" only if another creditor has a perfected interest in the corporate funds superior to the tax lien, and has expressly forbidden the use of those funds to pay taxes, such as where a secured creditor restricts the use of proceeds of collateral by the debtor. *Honey v. United States,* 963 F.2d 1083, 1090 (8th Cir.1992), *cert. denied,* 506 U.S. 1028, 113 S.Ct. 676, 121 L.Ed.2d 598 (1992); *accord United States v. Kim,* 111 F.3d 1351, 1359 (7th Cir.1997); *Barnett v. IRS,* 988 F.2d 1449, 1458 (5th Cir.), *cert. denied,* 510 U.S. 990, 114 S.Ct. 546, 126 L.Ed.2d 448 (1993).

■ The Debtor has not met his burden of disproving willfulness as to any of the quarters in which he was assessed the 26 U.S.C. § 6672 liability. He presented no argument on this issue for the periods after he returned to Florida. Moreover, he presented insufficient evidence to sustain his burden as to the two quarters in 1989 when he was in California.

Debtor asks the Court to believe that he simply did not know about the accrued liabilities in 1989, claiming he knew nothing about them until a prospective purchaser told him of the debts in November, 1989. The testimony is not credible in light of the other evidence presented.

Furthermore, there is evidence that the Debtor recklessly disregarded the risk of non-payment of taxes. He knew from the loan documents he signed that the company had cash flow problems and habitually financed its accounts receivable. The Debtor knew from the guarantees he signed that Ocean Bank was less than fully confident in the company's ability to repay the nearly $120,000.00 in short-term loans extended from June 1988 to November 1989.

Finally, Debtor's asserted ignorance of the liability for the 1989 quarters is irrelevant in light of the checking account information presented. There were funds in the approximate amount of $100,000.00 deposited into and withdrawn from the corporate accounts in the six month period ending April 30, 1991. Debtor made no effort to prove that these

funds were encumbered and legally available for disbursement to the United States. Accordingly, it is

ORDERED that the Debtor's Objection to Claim of the IRS is OVERRULED and the IRS's amended proof of claim is allowed as filed.